IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHARON CARROLL TSERKIS, et. al.,
    *Plaintiffs*,

v().

BALTIMORE COUNTY, et. al.,
    *Defendants*.

Civil Action No. ELH-19-202

**MEMORANDUM**

This civil rights case arises from the unfortunate death of fifty-two-year-old Jeffrey Evans ("Mr. Evans" or the "Decedent"), who was tased, shot, and killed by Baltimore County police while at home on December 14, 2015.

On December 7, 2018, plaintiffs Sharon Carroll Tserkis, individually and as Personal Representative of the Estate of Jeffrey Evans; Jacqueline Williams; Valerie Jernigan; and Amanda Cooper-Spaulding, as mother, Guardian, and next friend of K.E., a minor,[1] filed suit in the Circuit Court for Baltimore County against Baltimore County (the "County") as well as Baltimore County Police Officers Michael Pfadenhauer, Chad Canup, Michael Spahn, Adam Heavner, and Michaela Moore (collectively, "Officers" or "Officer Defendants"). ECF 1-4 (the "Complaint"). Plaintiffs allege, *inter alia*, use of excessive force during an allegedly unlawful seizure of Mr. Evans. Plaintiffs seem to have sued the Officers in their official and individual capacities. *Id.* at 3-4.

The Complaint contains eleven counts. Count I presents a wrongful death claim against all defendants, pursuant to Maryland Code, § 3-904(a) of the Courts and Judicial Proceedings

---

[1] K.E. is the grandchild of the Decedent. ECF 1-4, ¶ 6. Jacqueline Williams and Valerie Jernigan are sisters of the Decedent. *Id.* ¶¶ 7, 8.

Article ("C.J."). Count II asserts a Survival Action, lodged against all defendants. Count III, against all defendants, asserts a claim under Article 24 of the Maryland Declaration of Rights. Count IV, against all defendants, asserts a claim of "Bystander Liability" under an unspecified provision of the Maryland Constitution. Count V, lodged against the Officers, asserts a violation of Article 24 of the Maryland Declaration of Rights. Counts VI through X arise under 42 U.S.C. § 1983. Specifically, Count VI asserts that the Officers and the County are liable for the violation of Mr. Evans' rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Count VII alleges that Officers Pfadenhauer, Spahn, Heavner, and Canup used excessive force against Mr. Evans, in violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments. Count VIII lodged against all defendants, is titled as a claim for "Bystander Liability." In Count IX, plaintiffs raise a claim of pattern and practice of failure to train and supervise, lodged against Officers Pfadenhauer, Spahn, Heavner, Canup, and the County. Count X sets forth a claim against all defendants for use of excessive force. Count XI, lodged against Officers Pfadenhauer, Spahn, Heavner, and Canup, presents a common law battery claim.

Defendants removed the case to federal court on January 22, 2019, on the basis of federal question jurisdiction, pursuant to 28 U.S.C. § 1331. ECF 1 ("Notice of Removal"). Thereafter, both the County (ECF 4) and the Officers (ECF 5) answered the suit.

On April 9, 2019, the County and Officers Pfadenhauer, Spahn, Heavner, and Canup filed a Motion to Bifurcate and for Partial Stay of Discovery. ECF 12. The motion is supported by a memorandum of law. ECF 12-1 (collectively, the "Motion" or the "Motion to Bifurcate"). Plaintiffs oppose the Motion (ECF 13), to which the defendants have replied. ECF 14.

No hearing is necessary to resolve the matter. *See* Local Rule 105(6). For the reasons that follow, I shall grant the Motion to Bifurcate. ECF 12. Therefore, I will stay discovery as to the claims against the County, pending disposition of the claims against the Officers.

## I. Factual Background

At an unspecified time on the morning of December 14, 2017, Mr. Evans' girlfriend, Jennifer Wild, called 911. ECF 1-4, ¶ 21. She told the dispatcher that Mr. Evans had ingested a large quantity of pills, and she asked the dispatcher to send assistance to Mr. Evans' home, located in the County. *Id.*

At around 8:30 a.m., Officer Moore arrived at Mr. Evans' residence. *Id.* ¶ 22. She entered the dwelling and found Mr. Evans "lying on the couch." *Id.* ¶ 22. He was "coherent." *Id.*

Paramedics Tyler Armstrong and Teressa Santos arrived shortly thereafter. *Id.* Mr. Evans told Officer Moore and the paramedics that he had ingested a large amount of prescription pills. *Id.* Officer Moore told Mr. Evans that he needed to go to the hospital. But, Mr. Evans responded that he did not want treatment. Mr. Evans then got up from the couch, walked to the kitchen, and retrieved a beer. *Id.* As Mr. Evans drank the beer, Office Moore observed Mr. Evans open a kitchen drawer, which contained a pair of scissors. *Id*. Officer Moore called for backup. *Id.*

Officer Pfadenhauer responded to Officer Moore's call. *Id.* ¶ 23. When Officer Pfadenhauer arrived, Mr. Evans was still standing in the kitchen near the open drawer. *Id.* Officers Moore and Pfadenhauer and Mr. Evans stood approximately fifteen feet apart, separated by a large kitchen island. *Id.* After being briefed on the situation by Officer Moore, Officer Pfadenhauer called for the assistance of two "taser operators," Officers Spahn and Heavner. *Id.*

Officer Canup then arrived at the scene. *Id.* ¶ 24. Upon entering the residence, Officer Canup went to the top of the stairs in the hallway and un-holstered his gun. *Id.* From that position,

Officer Canup spoke to Mr. Evans, who was still in the kitchen. At that point, Mr. Evans opened the fridge and started to drink another beer. *Id.*

Officer Canup asked Ms. Wild to go outside with the paramedics. *Id.* She followed Officer Canup's directive and left the residence. *Id.*

When Officers Spahn and Heavner arrived, they joined Officers Moore and Pfadenhauer in the kitchen. *Id.* ¶ 25. Officers Spahn and Heavner positioned themselves behind the kitchen island, while Officer Pfadenhauer moved to the left of the island. *Id.* Office Moore took cover behind Officer Spahn. *Id.* Officer Canup remained in the hallway. *Id.*

Officer Spahn told Mr. Evans that he had to go to the hospital. *Id.* ¶ 26. Again, Mr. Evans refused. *Id.* Then, "[w]ithout provocation," Officer Spahn discharged his taser into Mr. Evans' chest. *Id.* When Mr. Evans tried to remove the taser probes, Officer Spahn unsuccessfully discharged his taser a second time. *Id.*

Mr. Evans then removed three small knives from the kitchen drawer. *Id.* The officers ordered Mr. Evans to drop the knives. When Mr. Evans ignored their directive, Officer Heavner discharged his taser. *Id.* As Mr. Evans was attempting to remove the taser probes, Officer Spahn shot Mr. Evans with his service weapon. *Id.* "Almost simultaneously," Officer Pfadenhauer fired a round from his firearm, striking Mr. Evans in the chest, and Officer Canup fired three rounds into Mr. Evans. *Id.*

According to plaintiffs, during the encounter Mr. Evans never crossed the kitchen island or moved towards the officers. *Id.* To the contrary, plaintiffs allege that Mr. Evans retreated from the Officers after he removed the knives from the kitchen drawer. *Id.*

Mr. Evans died from his injuries. This lawsuit followed.

## II. Discussion

### A.

Defendants seek to bifurcate the claims against the individual defendants and the County, pursuant to Fed. R. Civ. P. 42(b). ECF 12. Further, defendants urge the Court to stay discovery against the County, pending the resolution of the § 1983 claims against the Officers. *Id.*

Rule 42(b) provides: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Notably, Rule 42(b) is disjunctive, meaning "[o]nly one of these criteria need be met to justify bifurcation." *Saxion v. Titan-C-Mfg.*, 86 F.3d, 553 556 (6th Cir. 1996) (citations omitted).

District courts have "broad discretion in deciding whether to bifurcate claims for trial, and the exercise of that discretion will be set aside only if clearly abused." *Beasley v. Kelly*, DKC-10-0049, 2010 WL 3221848, at *3 (D. Md. Aug. 13, 2010) (citing *Dixon v. CSX Transp., Inc.*, 990 F.2d 1440, 1443 (4th Cir. 1993), *cert. denied*, 510 U.S. 915 (1993)); *see also Shetterly v. Raymark Indus., Inc.*, 117 F.3d 776, 782 (4th Cir. 1997) (decisions whether to bifurcate are reviewed for abuse of discretion); *Brown v. Bailey*, RDB-11-1901, 2012 WL 2188338, at *4 (D. Md. June 13, 2012); *Dawson v. Prince George's Cty.*, 896 F. Supp. 537, 539 (D. Md. 1995); 9A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2388 (3d ed. 2019) ("It is well-established by a wealth of case law that ultimately the question of whether to conduct separate trials under Rule 42(b) should be, and is, a matter left to the sound discretion of the trial court[.]").

### B.

Resolution of the bifurcation motion requires a brief review of 42 U.S.C. § 1983, on which many of plaintiffs' claims are based. Section 1983 provides that a plaintiff may file suit against

any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see, e.g.*, *Filarsky v. Delia*, 566 U.S. 377, 383 (2012). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

"To state a claim under Section 1983, a plaintiff must show that the alleged constitutional deprivation at issue occurred because of action taken by the defendant 'under color of . . . state law.'" *Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019) (quoting *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also Filarsky*, 566 U.S. at 383; *Wahi v. Charleston Area Medical Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009). The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips*, 572 F.3d at 180.

In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), the Supreme Court explained that a municipality is subject to suit under § 1983 based on the unconstitutional actions of individual defendants where those defendants were executing an official policy or custom of the local government that violated the plaintiff's rights. *Id.* at 690-91. As the *Monell* Court said, 436 U.S. at 694, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury the government as an entity is responsible under § 1983." *See also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Therefore, "Section 1983 plaintiffs seeking to impose liability on a municipality must . . . adequately plead and prove the existence of

6

an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994); *see Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Kirby v. Elizabeth City*, 388 F.3d 440, 451 (4th Cir. 2004), *cert. denied*, 547 U.S. 1187 (2006); *Young v. City of Mount Ranier*, 238 F.3d 567, 579 (4th Cir. 2001).

It is axiomatic that a *Monell* claim cannot lie "where there is no underlying constitutional violation by the employee." *Young*, 238 F.3d at 579; *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1996) (per curiam) ("[N]either *Monell* . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when the jury has concluded that the officer inflicted no constitutional harm."); *Anderson v. Caldwell Cty. Sherriff's Office*, 524 F. App'x 854, 862 (4th Cir. 2013) ("No actionable claim against supervisors or local governments can exist without a constitutional violation committed by an employee."); *Burgess v. Balt. Police Dep't*, RDB-15-0834, 2016 WL 1159200, at *1 (D. Md. Mar. 23, 2016); *Williamson v. Prince George's Cty.*, DKC-10-1100, 2011 WL 1065780, at *2 (D. Md. Mar. 21, 2011).

Moreover, *Monell* liability attaches "only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original); *accord Holloman v. Markowski*, 661 F. App'x 797, 799 (4th Cir. 2016) (per curiam), *cert. denied*, 137 S. Ct. 1342 (2017). In other words, "a city or other local governmental entity cannot be subject to liability at all unless the harm was caused in the implementation of 'official municipal policy.'" *Lozman v. City of Riviera Beach*, ___ U.S. ___, ___, 138 S. Ct. 1945, 1951 (2018) (quoting *Monell*, 436 U.S. at 691). Consequently, there is no vicarious liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable

7

to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane*, 355 F.3d at 782.

As a result, in most cases, a plaintiff's § 1983 claims against a municipality or a supervisor "hinge on his ability to show that [individual defendants] violated his constitutional rights." *Dawson*, 896 F. Supp. at 540; *see also Young*, 238 F.3d at 579; *Temkin v. Frederick Cty. Comm'rs*, 945 F.2d 716, 724 (4th Cir. 1991) ("A claim of inadequate training under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised."), *cert. denied*, 502 U.S. 1095 (1992); *Burgess*, 2016 WL 1159200, at *1; *Williamson*, 2011 WL 1065780, at *2; *Marryshow v. Town of Bladensburg*, 139 F.R.D. 318, 319 (D. Md. 1991) ("Under Section 1983, to hold the [supervisor and municipal] Defendants liable, Plaintiff must first establish that at least one [individual] Defendant violated his constitutional rights.").

In sum, a viable § 1983 *Monell* claim consists of two components: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights. *See, e.g.*, *Brown*, 520 U.S. at 403; *Kirby*, 388 F.3d at 451; *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

Cases that contain *Monell* claims "are good candidates for bifurcation." *Beasley*, 2010 WL 3221848, at *3. Bifurcation can advance the efficient and convenient resolution of the case because where there is no "initial finding that a government employee violated a plaintiff's constitutional rights, . . . . no subsequent trial of the municipality is necessary." *Id.* In addition, bifurcation might spare the parties from expending valuable resources in discovery, because resolution of the claims as to the individual defendants may obviate the need to litigate the *Monell*

8

claim. *See Burgess*, 2016 WL 1159200, at *1 (finding bifurcation appropriate "[g]iven the derivative nature of [the police department's] potential liability"); *Taylor v. Maryland*, DKC-10-2167, 2010 WL 5247903, at *2 (D. Md. Dec. 16, 2010) ("Because of the secondary nature of a municipality on potential liability under § 1983, courts have frequently bifurcated discovery and or trial so that cases proceed first with a trial against the individual defendant(s) alleged to be primarily liable[.]" (alteration in original)).

Equally important, bifurcation prevents the potential prejudice to individual defendants that may result from the introduction of inflammatory evidence concerning the municipality's policies, practices, or customs. *Taylor*, 2010 WL 5247903, at *2; *Beasley*, 2010 WL 3221848, at *3. This is especially true in excessive force cases, where the *Monell* evidence would include "prior incidents of police brutality and policymakers' reactions to such incidents." *Beasley*, 2010 WL 3221848, at *3. Although such evidence "is relevant under the *Monell* analysis," it might unfairly bias the jury as to the liability of the individual defendants. *See id.* (observing that the introduction of instances of police misconduct at trial "would be highly prejudicial to the individual government employees").

Courts in this district have consistently ruled that in cases such as this one bifurcation "is appropriate and often desirable." *Brown*, 2012 WL 2188338, at *4; *see also, e.g.*, *Peprah v. Williams*, GLR-18-990, 2019 WL 224245, at *10 (D. Md. Jan. 15, 2019) ("This Court has repeatedly held that bifurcation is appropriate in cases involving § 1983 claims against individual defendants and municipalities."); *accord Peterson v. Prince George's Cty*, PWG-16-1947, 2017 WL 2666109 at *4 (D. Md. June 21, 2017); *Humbert v. O'Malley*, WDQ-11-0440, 2012 WL 1066478, at *2 (D. Md. Mar. 27, 2012), *rev'd on other grounds*, 866 F.3d 546 (4th Cir. 2017); *James v. Frederick Cty. Pub. Schs.*, 441 F. Supp. 2d 755, 762 (D. Md. 2006); *Robertson v. Prince*

9

*George's Cty.*, 215 F. Supp. 2d 664, 665 (D. Md. 2002); *Dawson*, 896 F. Supp. at 539; *Marryshow*, 139 F.R.D. at 319.

## C.

Defendants argue that bifurcation of the *Monell* claim against the County is warranted "to prevent the [Officers] from suffering unfair prejudice by the introduction of" evidence concerning other instances of police misconduct, and because "discovery into such 'policies or practices' would be unduly burdensome unless and until a constitutional violation is proven in the first place." ECF 12-1 at 3. Plaintiffs disagree. They contend that determining the liability of the Officers first will not expedite the resolution of this lawsuit. They posit that, even if the Officers are found not liable, plaintiffs may nonetheless have a viable *Monell* claim against the County. ECF 13 at 3-4 (citing *Noel v. Artson*, No. 06-2069-WMN, 2006 WL 8427663 (D. Md. Nov. 1, 2006)). Further, plaintiffs maintain that bifurcation is unnecessary to prevent prejudice to the Officers because, "as in criminal trials, the Court can administer 'limiting jury instructions' . . . ." *Id.* at 9.

In my view, bifurcation is appropriate in this case because it will prevent prejudice to the individual defendants and because it best serves judicial economy.

First, bifurcation will protect against the risk of unfair prejudice to the Officer Defendants. In *Monell*, 436 U.S. 658, the Supreme Court determined that local governmental bodies are liable under § 1983 only if the plaintiff's constitutional rights were violated by government employees who were executing an official policy or custom of the local government. *Id.* at 690-91; *see also Love-Lane*, 355 F.3d at 782. Therefore, "[s]ection 1983 plaintiffs seeking to impose liability on a municipality must . . . adequately plead and prove the existence of an official policy or custom that

is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan*, 15 F.3d at 338.

To "adequately plead" such a claim against the County in this case, it is highly likely that plaintiffs will rely on evidence of previous police brutality incidents. Indeed, this is already apparent from plaintiffs' Complaint. *See* ECF 1-4, ¶¶ 87, 94, 95, 114. And, the interrogatories that plaintiffs have propounded to the County suggest the same concern. *See, e.g.*, ECF 12-1 at 4 ("**REQUEST 12**: "Produce all documents that show the policies, customs, and procedures for investigating complaints of abuse of authority against the officers, agents, and employees of the Baltimore County Police Department.").

As discussed, "[e]vidence of the County's custom, practice or policy may include evidence of 'prior incidents of police brutality, the nature of such incidents, and the municipal policy-makers' reaction to them.'" *Id.* (citations omitted). But, "[w]hile this evidence is most certainly relevant" to the plaintiff's case against a municipality, "the Court would not likely allow it" in the plaintiffs' suit against the Officer Defendants. *Id.*; *see also Humbert*, 2012 WL 1066478, at *2 (noting that a plaintiff's submission of "evidence of prior misconduct by police officers" to demonstrate "deliberate indifference, or a custom or policy of constitutional violations . . . . would unduly prejudice" the individual defendants); *Beasley*, 2010 WL 3221848, at *3 (finding that such evidence against a municipality "would be highly prejudicial to the individual government employees").

Plaintiffs assert that, in the event this case proceeded to trial, a limiting instruction would easily cure any potential prejudice to the defendants caused by the introduction of *Monell* evidence against the County. ECF 13 at 7-8. But, the introduction of *Monell* evidence in a trial involving the Officers would inject an issue not necessarily relevant to the individual defendants; it is

11

potentially inflammatory; and the reality is that it would be difficult for the jury to compartmentalize such evidence. *See Veal v. Kachiroubas*, No. 12 C 8342, 2014 WL 321708, at *6 (N.D. Ill. Jan. 29, 2014) ("Presenting evidence to the jury regarding a village-wide policy, practice or custom involving multiple improper police actions poses a danger of undue prejudice to the defendant officers by creating the perception that the police department routinely acts improperly, even if the officers acted properly in this case."); *Taylor*, 2010 WL 5247903, at *2 (concluding that "while a jury instruction could limit the harm to [the officer defendant] from prejudicial evidence, no instruction is likely to remove entirely the potential for prejudice."). In short, a limiting instruction is not as effective as bifurcation in guarding against the concerns outlined above. *See Dawson*, 896 F. Supp. at 540 (concluding, in the context of a *Monell* claim coupled with allegations against individual officers, that "[t]he best way to avoid the conflicts resulting in trying the two claims together is to bifurcate them").

Given the far-reaching scope of *Monell* discovery, it makes good sense to establish first whether a constitutional violation occurred. This is because the absence of such a violation might well make discovery unnecessary with respect to the County.

Moreover, bifurcating the claims against the County and the Officer Defendants would promote judicial economy. *See* Fed. R. Civ. P. 42(b). Determining whether the Officer Defendants violated the Decedent's constitutional rights is a prerequisite to establishing liability against the County. *See Young*, 238 F.3d at 579; *Peprah*, 2019 WL 224245, at *10; *Burgess*, 2016 WL 1159200, at *1; *Williamson*, 2011 WL 1065780, at *2; *Marryshow*, 139 F.R.D. at 319. Failure to bifurcate the *Monell* claim would prolong the trial, because plaintiffs would necessarily have to present evidence pertinent to the *Monell* claim, while also producing evidence as to the Officers. Bifurcation "preserves scarce judicial and party resources by avoiding expenses related to

[plaintiffs'] *Monell* claims until [they] ha[ve] established the existence of an underlying constitutional violation." *Peprah*, 2019 WL 224245, at *10.

In other words, bifurcation will facilitate an expeditious trial as to the individual defendants by avoiding the delay inherent in the discovery process as to the *Monell* claim. It would also narrow the issues for trial. This would lead to a reduction of costs, without any real prejudice to plaintiff. *See Taylor*, 2010 WL 5247903, at *2 ("Streamlining the issues and limiting discovery . . . will curb rather than increase costs[.]").

Nonetheless, plaintiffs insist that bifurcating the *Monell* claim is inefficient because the County could still be liable under § 1983 even if the Officer Defendants are not. To be sure, "*Monell* . . . and its progeny do not require that a jury must first find an individual defendant *liable* before imposing liability on [a] local government." *Anderson v. City of Atlanta*, 778 F.2d 678, 686 (11th Cir. 1985) (emphasis added). There are some narrow circumstances in which "a finding of no liability on the part of the individual municipal actors can co-exist with a finding of liability on the part of the municipality." *Int'l Ground Transp., Inc. v. Mayor and City Council of Ocean City*, 475 F.3d 214, 219 (4th Cir. 2007). One such situation is when the individual defendants are entitled to qualified immunity. *Id*.

"Qualified immunity protects government officials from liability for violations of constitutional rights so long as they could reasonably believe that their conduct did not violate clearly established law." *Gilliam v. Sealey*, 932 F.3d 216, 229 (4th Cir. 2019); *accord Hunter v. Town of Mocksville*, 789 F.3d 389, 401 (4th Cir. 2015). A government official is entitled to qualified immunity "if (1) the facts, viewed in the light most favorable to the plaintiff . . . do not demonstrate a violation of the plaintiff's constitutional rights; or (2) they do, but the relevant constitutional right was not clearly established at the time of the alleged violation." *Harris v.*

13

*Pittman*, 927 F.3d 266, 270 (4th Cir. 2019); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Merchant v. Bauer*, 677 F.3d 656, 661 (4th Cir. 2012), *cert. denied*, 568 U.S. 1068 (2012).

Although qualified immunity protects individual defendants, it does not shield municipalities. *Owen v. City of Independence*, 445 U.S. 622 (1980). The Fourth Circuit has observed that "[t]his distinction has an important ramification on liability[.]" *Int'l Ground Transp.*, 475 F.3d at 219. The Court explained, *id.* at 219-20:

> [B]ecause municipalities are not entitled to assert a qualified immunity defense, a finding of a constitutional violation is conclusive as to their liability. Thus, a jury could find that a constitutional violation has occurred but that the individual defendants are entitled to qualified immunity. Yet the jury could also return a verdict against a municipality based on the same constitutional violation . . . . We hold, therefore, that when a jury, which has been instructed on a qualified immunity defense as to the individual defendants, returns a general verdict in favor of the individual defendants but against the municipality, the verdict is consistent and liability will lie against the municipality (assuming the verdict is proper in all other respects).[]

Thus, plaintiffs are correct that bifurcation could theoretically result in two trials, rather than one. However, this possibility does not alter my calculus.

The key question is whether the Officers committed constitutional violations, not whether they can be held liable for them. Plaintiffs will have a viable *Monell* claim against the County, despite the Officers being found not liable, if the fact-finder concludes that the Officers violated Mr. Evans' constitutional rights, and that those rights were not clearly established, such that the Officers are entitled to qualified immunity. On the other hand, if the fact-finder concludes that the Officers are not liable under § 1983 on the ground that they did not violate Mr. Evans' constitutional rights, then plaintiffs' *Monell* claim would founder as a matter of law. In either circumstance, the question of whether any police officer committed a constitutional violation is central to plaintiffs' claims against the County.

### III. Conclusion

In my view, bifurcation is appropriate because it will promote judicial economy, conserve the parties' resources, prevent prejudice to the Officers, and will not prejudice the plaintiffs. Bifurcation "streamline[s] the issues for trial [and] it prevents prejudice to the individual defendant that would otherwise arise from the introduction of evidence of prior incidents of police brutality in order to make a case against the municipality." *Taylor*, 2010 WL 5247903, at *2.

Therefore, I shall grant the Motion to Bifurcate (ECF 12) as to Count IX. And, discovery pertaining to Count IX shall be stayed, pending resolution of plaintiffs' claims against the Officer Defendants.

An Order follows.

Date: October 4, 2019                             _____/s/_____
                                                  Ellen L. Hollander
                                                  United States District Judge