IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHARON CARROLL TSERKIS, et. al.,
    *Plaintiffs*,

v.

BALTIMORE COUNTY, et. al.,
    *Defendants*.

Civil Action No. ELH-19-202

**MEMORANDUM**

This civil rights case arises from the unfortunate death of fifty-two-year-old Jeffrey Evans ("Mr. Evans" or the "Decedent") on December 14, 2015. He was tased, shot, and killed by Baltimore County police while at home. Plaintiffs allege, *inter alia*, use of excessive force during an allegedly unlawful seizure of Mr. Evans. ECF 1-4. Defendants removed the case to federal court on January 22, 2019, on the basis of federal question jurisdiction, pursuant to 28 U.S.C. § 1331. ECF 1.

Summary judgment motions were due by February 22, 2020. But, defendants failed to move for summary judgment in accordance with the Court's Scheduling Order, as amended. *See* ECF 11, ECF 19, ECF 27. Months later, defendants filed a "Motion for Leave to File Motion for Summary Judgment." ECF 45. It is supported by a memorandum of law (ECF 45-2) (collectively, the "Motion") and numerous exhibits. Plaintiffs oppose the Motion. ECF 46. Defendants have replied. ECF 47.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion.

## I. Procedural Background[1]

On December 7, 2018, plaintiffs Sharon Carroll Tserkis, individually and as Personal Representative of the Estate of Jeffrey Evans; Jacqueline Williams, as "Next of Kin"; Valerie Jernigan, as "Next of Kin"; and Amanda Cooper-Spaulding, as Mother, Guardian, and Next Friend of K.E., a minor, filed suit in the Circuit Court for Baltimore County against Baltimore County (the "County") as well as Baltimore County Police Officers Michael Pfadenhauer, Chad Canup, Michael Spahn, Adam Heavner, and Michaela Moore (collectively, "Officers" or "Officer Defendants"). ECF 1-4 (the "Complaint"). K.E. is the grandchild of the Decedent, and Tserkis, Williams, and Jernigan are his sisters. *Id.* ¶¶ 6, 7, 8.[2]

The Complaint contains eleven counts. Count I presents a wrongful death claim against all defendants, pursuant to Maryland Code, § 3-904(a) of the Courts and Judicial Proceedings Article ("C.J."). Count II asserts a Survival Action, lodged against all defendants. Count III, asserted against all defendants, sets forth a claim under Article 24 of the Maryland Declaration of Rights. Count IV, against all defendants, asserts a claim of "Bystander Liability" under an unspecified provision of the Maryland Constitution. Count V, lodged against the Officers, asserts a violation of Article 24 of the Maryland Declaration of Rights. Counts VI through X arise under 42 U.S.C. § 1983. Specifically, Count VI asserts that the Officers and the County are liable for the violation of Mr. Evans's rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution. Count VII alleges that Officers Pfadenhauer, Spahn, Heavner, and Canup used excessive force against Mr. Evans, in violation of the Fourth, Fifth, Eighth, and Fourteenth

---

[1] The factual background set forth in the Court's Memorandum of October 4, 2019 (ECF 21) is incorporated here by reference. I shall address only the pertinent procedural history.

[2] Valerie Jernigan is also referred to as Valerie Stutzman. *See* ECF 45-2 at 1.

2

Amendments. Count VIII, lodged against all defendants, is titled as a claim for "Bystander Liability." In Count IX, plaintiffs raise a claim of pattern and practice of failure to train and supervise, lodged against Officers Pfadenhauer, Spahn, Heavner, Canup, and the County. Count X sets forth a claim against all defendants for use of excessive force. Count XI, lodged against Officers Pfadenhauer, Spahn, Heavner, and Canup, presents a common law battery claim.

The County and Officers Pfadenhauer, Spahn, Heavner, and Canup moved to bifurcate Count IX, lodged against the County, for discovery and trial. ECF 12. By Memorandum (ECF 21) and Order of October 4, 2019, I granted the motion. ECF 22.

Several motions in limine are now pending, and they are scheduled to be heard on February 10, 2021. ECF 59; *see* ECF 50, 51, 52, 53, 55. In addition, the Officers recently filed "Motion To Bifurcate Damages Trial." ECF 74. That motion is not yet fully briefed.

As noted, the case was removed to this Court on January 22, 2019. ECF 1. I issued a Scheduling Order soon after, on February 13, 2019. ECF 11. Among other things, I set October 15, 2019, as the deadline for the filing of dispositive pretrial motions. *Id.* at 2. By consent, I revised the Scheduling Order on September 3, 2019. ECF 19. Thereafter, by Order of October 21, 2019, I again extended the deadline for dispositive motions; they were due within forty-five days of a settlement conference, if the case did not settle. ECF 27. And, by Order of October 22, 2019, the case was referred to a magistrate judge for a settlement conference. ECF 28.

A settlement conference was held on January 6, 2020, before Magistrate Judge J. Mark Coulson. *See* Docket. The case did not settle. But, no dispositive motions were filed during the forty-five days that followed.[3] The deadline corresponded to about the time when the country was

---

[3] Notably, with the defendants' consent, plaintiffs conducted a deposition of defendant Moore on February 20, 2020. ECF 45-2 at 3. That date is about the time summary judgment motions were due.

3

beginning to confront the global COVID-19 pandemic. The Court also notes that, unfortunately, during the ensuing months, a lead defense attorney in the case was diagnosed with advanced cancer, underwent surgery at Johns Hopkins Hospital, and has since retired from the Baltimore County Office of Law.

In particular, the Court and plaintiffs' counsel were advised by email on April 2, 2020, of the serious health condition of defense counsel. He represented, *inter alia*, that he had received the diagnosis of metastatic cancer several weeks earlier. The Court does not know the extent to which defense counsel's illness accounts for the defendants' failure to move for summary judgment. But, I note that defense counsel's representations in his email suggest that his health issues coincided with the time period when the summary judgment motion was due.

The Court held a telephone conference with counsel on May 18, 2020. ECF 36. Based on that conference, I issued an Order on May 21, 2021, setting a three-week jury trial to begin on February 22, 2021, with a backup trial date of April 12, 2021. ECF 37. At the time I scheduled the trial, however, the country was in the grip of the global COVID-19 pandemic. Indeed, as discussed, *infra*, at that time the Court was unable to conduct in-court proceedings. In setting the trial for February 2021, the Court was hopeful that the public health crisis would improve by that time.

New defense attorneys entered the case in July and September 2020. ECF 38; ECF 40. Although the defendants failed to timely move for summary judgment, on October 19, 2020, defendants submitted a lengthy "Memorandum of Law for Trial Issues Dispositive of Plaintiffs' Claims." ECF 41 (the "Trial Memorandum"). The Trial Memorandum is supported by thirty-six exhibits. It sets out key issues that, according to the defense, the Court will necessarily face at

4

trial. These are issues, such as qualified immunity, that are usually raised in a dispositive pretrial motion.

Defendants contend that the Motion should be granted so that they can move for summary judgment on grounds of qualified immunity. ECF 45-2 at 3-5. A proposed summary judgment motion (ECF 45-3), accompanied by a memorandum of law (ECF 45-4, collectively, the "Proposed Summary Judgment Motion"), is appended to the Motion as an exhibit. The Proposed Summary Judgment Motion appears to be virtually identical to the Trial Memorandum.

Both submissions address two principal legal issues. First, the Officers address plaintiffs' standing. The Officers contend that Tserkis, in her capacity as the personal representative of Mr. Evans's estate, "is the only proper plaintiff with standing in this case." ECF 45-4 at 19.[4] The lion's share of the Officers' arguments, however, concern their claims of qualified immunity. In sum, they assert that all of plaintiffs' claims asserting violations of Mr. Evans's constitutional rights, including those arising out of the Maryland Declaration of Rights, are barred by the defense of qualified immunity. *Id.* at 19-38. They also contend that Count XI, the battery claim, fails as a matter of law. *Id.* at 34 n.8.

## II. Discussion

### A.

As I consider the Motion, I am mindful that COVID-19 continues to ravage the country, despite the beginning of a vaccination rollout. Indeed, the COVID-19 pandemic is the worst public health crisis that this country has experienced since 1918. *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration."). The pandemic "has produced

---

[4] For convenience, I cite only to the Proposed Summary Judgment Motion.

unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, 462 F. Supp. 3d 746, 752-53 (2020), *vacated,* 815 Fed. App'x 978 (2020). And, for a significant period of time, life as we have known it came to a halt. Although many businesses and schools reopened for a period of time, many are again subject to closure or substantial restrictions, due to the virulent resurgence of the virus in recent weeks.

To date, nearly 400,000 Americans have died due to COVID-19. *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Jan. 19, 2021). As a result of the pandemic, the District of Maryland has been unable to conduct jury trials for much of the past year.

By Amended Standing Order filed on March 13, 2020, No. 2020-03, Chief Judge Bredar postponed jury trials in this District through April 24, 2020. Case No. 1:00-mc-00308, ECF 92. In Standing Order 2020-07, issued April 10, 2020, postponements were extended through June 5, 2020. Case No. 1:00-mc-00308, ECF 99. On May 22, 2020, postponements were again extended through June 30, 2020. Case No. 1:00-mc-00308, Standing Order 2020-11, ECF 103. But, Chief Judge Bredar also noted that as of July 1, 2020, for civil cases, and August 1, 2020, for criminal cases, jury trials would resume "in the discretion of individual judges of this Court, after consultation with court staff regarding juror and participant safety and limited court capacity." *Id.*

However, when the District of Maryland attempted to conduct jury trials for a few months last summer, there were many restrictions and limitations. For one thing, there were significant limits on the number of cases that could be tried at one time, and limits on the number of defendants in multi-defendant criminal cases who could be safely accommodated in court in a given case. In addition, trials could not exceed one week, due to the need to allocate resources.

In any event, the window for trials was short lived. In response to worsening COVID-19 virus data, on November 11, 2020, Chief Judge Bredar issued Standing Order 2020-20, suspending all in-court proceedings. Case No. 1:00-mc-00308, ECF 119. On November 19, 2020, Chief Judge Bredar extended Standing Order 2020-20 through January 15, 2021. Case No. 1:00-mc-00308, ECF 120. As conditions continued to deteriorate, Chief Judge Bredar again extended the duration of the restrictions set out in Standing Order 2020-20, through February 26, 2021. Case no. 1:00-mc-00308, ECF 123. Thus, this case cannot proceed to trial on February 22, 2021.

Moreover, due to the pandemic, serious delays in regard to criminal cases have ensued. In those cases, the Sixth Amendment may be implicated.

At this point, it is not known if the Court will be able to conduct jury trials in April 2021. But, even if it can, trial of this case in April 2021 is not feasible, because the Court will most likely have to prioritize criminal cases that are also awaiting trial.

These are challenging times.

**B.**

Fed. R. Civ. P. 16 concerns scheduling and case management. Where a party seeks to file a pretrial motion after the expiration of a "deadline established in a scheduling order for doing so, Rule 16(b)(4) [is] the starting point in the Court's analysis." *Wonasue v. Univ. of Maryland Alumni Ass'n*, 295 F.R.D. 104, 106 (D. Md. 2013); *see Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 152 (4th Cir. 2020).

"The deadlines set forth in a court's case management order serve an important function in the flow of litigation." *Benjamin v. Sparks*, ___ F.3d ___, 2021 WL 161981, at *7 (4th Cir. Jan. 19, 2021); *see also Naughton v. Bankier*, 14 Md. App. 641, 653, 691 A.2d 712, 718 (1997) (recognizing that a scheduling order helps "to maximize judicial efficiency and minimize judicial

inefficiency"); *Gestetner Corp. v. Case Equipment Co.*, 108 F.R.D. 138, 141 (D. Me. 1985). Notably, "[i]n an era of burgeoning case loads and [crowded] dockets, effective case management has become an essential tool for handling civil litigation." *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 45 (1st Cir. 2002) (alteration added). To that end, a scheduling order is an important vehicle in "'securing the just, speedy, and inexpensive determination of every action.'" *Miller v. Transcend Services, Inc.*, 10 CV 362, 2013 WL 1632335, at *4 (M.D.N.C. Apr. 16, 2013) (citation omitted).

A scheduling order is also mandatory. Rule 16(b)(1) states that, subject to certain exceptions, "the district judge . . . must issue a scheduling order." Further underscoring the importance of a scheduling order to case management, Rule 16(b)(2) commands that a scheduling order be issued "as soon as practicable" after a defendant has been served or appeared in a case.

Moreover, Rule 16(b)(4) provides: "A schedule may be modified only for good cause and with the judge's consent." Thus, Rule 16 "recognize[s] . . . that the parties will occasionally be unable to meet . . . deadlines [in a scheduling order] because scheduling order deadlines are established relatively early in the litigation." *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154 (1st Cir. 2004). But, a movant must demonstrate good cause to satisfy Rule 16(b)(4). *See Faulconer*, 808 F. App'x at 152; *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008); *Wonasue*, 295 F.R.D. at 106-07; *see also United States v. Hartford Accident & Indem. Co.*, No. CV JKB-14-2148, 2016 WL 386218, at *5 (D. Md. Feb. 2, 2016) ("The burden for demonstrating good cause rests on the moving party.").

The "'touchstone'" of Rule 16(b)(4)'s "good cause requirement is 'diligence.'" *Faulconer,* 808 F. App'x at 152 (citation omitted). The Fourth Circuit has endorsed this proposition several times, in line with other circuits. *Id.* at 152 n.1 (collecting cases). Ordinarily, "only diligent efforts

8

to comply with the scheduling order can satisfy Rule 16's good cause standard." *Id.* at 152; *accord Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D. Md. 2002) ("Lack of diligence and carelessness are 'hallmarks of failure to meet the good cause standard.'") (citation omitted).

In determining whether the moving party has met its burden to show good cause, courts may also consider "whether the moving party acted in good faith, the length of the delay and its effects, and whether the delay will prejudice the non-moving party." *Elat*, 993 F. Supp. 2d at 520. However, "'[i]f the movant has not been diligent in meeting the scheduling order's deadlines,' then other factors . . . generally will not be considered.'" *Faulconer,* 808 F. App'x at 152 (quoting *Kmak v. Am. Century Cos., Inc.*, 873 F.3d 1030, 1034 (8th Cir. 2017)). Some district court judges have expressed this proposition even more forcefully. *See, e.g.*, *Rassoull*, 209 F.R.D. at 374 ("'If [the moving party] was not diligent, the inquiry should end.'") (citation omitted); *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W. Va. 1995) ("'[T]he focus of the inquiry is upon the moving party's reasons for seeking modification. *If that party is not diligent, the inquiries should end*.'" (citation omitted) (emphasis in *Marcum*).

Of particular relevance here, courts have inherent power to manage their own dockets. In *Link v. Wabash R. Co.*, 370 U.S. 626, 632 (1962), the Supreme Court stated that a court's "inherent power" to dismiss a case for lack of prosecution is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs to as to achieve the orderly and expeditious disposition of cases." *See also Woodson v. Surgitek*, 57 F.3d 1406, 1417 (5th Cir. 1995) (observing that courts' inherent power permits "dismissing a case as a sanction for a party's failure to obey court orders").

**C.**

The gist of the Officers' argument is that moving for leave to seek summary judgment on the basis of a qualified immunity defense satisfies Rule 16's good cause standard. *See* ECF 45-2 at 3-5; ECF 47 at 2-4. The Officers do not clearly explain the reason for their tardiness: they state "that this matter has changed hands between counsel on at least three occasions." ECF 47 at 4. Plaintiffs counter that the Officers have demonstrated a lack of diligence. ECF 46 at 4-7. Moreover, plaintiffs note that even if the Motion is denied, the Officers will still be able to move for judgment as a matter of law at trial, under Fed. R. Civ. P. 50.

Qualified immunity is an "'*immunity from suit* rather than a mere defense to liability[.]'" *Ussery v. Mansfield*, 786 F.3d 332, 337 (4th Cir. 2015) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (emphasis in *Mitchell*); *see Gilliam*, 932 F.3d at 229. Accordingly, the immunity is "'effectively lost if a case is erroneously permitted to go to trial.'" *Ussery*, 786 F.3d at 337 (quoting *Mitchell*, 472 U.S. at 526). However, "[b]ecause an official 'who performs an act clearly established to be beyond the scope of his discretionary authority is not entitled to claim qualified immunity,' the defendant bears the initial burden 'of demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties.'" *Henry v. Purnell*, 501 F.3d 374, 377 n.2 (4th Cir. 2007) (quoting *In re Allen*, 106 F.3d 582, 593-94 (4th Cir. 1997)).

Under all of the circumstances, the Officers have demonstrated that there is good cause to modify the schedule in this case. To be sure, the Officer Defendants did not comply with the pertinent deadlines. But, as the Officers state in their reply, the current defense attorneys entered the case after the completion of discovery, and after the expiration of pertinent deadlines. ECF 47 at 4.

However, the legal issues that defendants raise, both in their Trial Memorandum and in their Proposed Summary Judgment Motion, will require resolution at some point. The question is when. Plaintiffs appear to prefer to wrestle over the legal issues after proceeding to trial. But conducting a jury trial requires the expenditure of significant time and resources by both the Court and the parties. It imposes on jurors who give their time. And, so long as we remain in the throes of the global pandemic, a jury trial will likely entail greater logistical and procedural complexity. Thus, resolving issues as to both standing and qualified immunity before trial will better serve the interests of judicial economy.

In addition, granting the Motion will not prejudice plaintiffs. As noted, due to the pandemic, it is unclear when the Court will return to a heightened phase of operations so as to resume jury trials. Moreover, allowing the case to proceed to trial would not be consistent with the Supreme Court's clear instruction in *Mitchell*, 472 U.S. at 526. The Officers have credibly advocated for the opportunity to present a defense based on qualified immunity—one that would be "lost if [the] case is erroneously permitted to go to trial.'" *Ussery*, 786 F.3d at 337 (quoting *Mitchell*, 472 U.S. at 526).

For the reasons set forth above, I shall grant the Motion.

## D.

I turn to the pending motions in limine.

"A motion *in limine* is a request for guidance by the court regarding an evidentiary question." *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38 (1984). Fed. R. Evid. 104(a) allows courts to "decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege."

Motions in limine help to streamline a case, because such motions "enable[ ] a court to rule in advance on the admissibility of documentary or testimonial evidence and thus expedite and render efficient a subsequent trial.'" *INSLAW, Inc. v. United States,* 35 Fed. Cl. 63, 65-66 (1996) (citation omitted). To be sure, rulings on such motions assist the parties in preparation for trial. However, such rulings are preliminary, and are made in the discretion of the court. *Luce*, 713 F.2d at 1239-40. When the evidence is actually offered at trial, the trial court may opt to change its ruling. *Id.* at 1239.

The Officers have filed two motions in limine that either restate or build upon arguments set forth in their Proposed Summary Judgment Motion. The Officers' "Motion In Limine To Exclude Evidence Of The Individual Plaintiffs' Claims And Request For Hearing" (ECF 51), supported by a memorandum of law (ECF 51-2), argues that plaintiff Tserkis, in her capacity as the personal representative of Mr. Evans's estate, is the only plaintiff with standing. *Id.* at 5. And, in the "Motion In Limine To Exclude Evidence Of, And Reference To, The Plaintiffs' Claims Barred By Qualified Immunity And Alternatively, For Judgment And Request For Hearing" (ECF 52), supported by a memorandum of law (ECF 52-2), the Officers contend that plaintiffs' constitutional claims are barred by qualified immunity. *Id.* at 5. They also assert that plaintiffs' battery claim fails. *Id.* at 20 n.8.

Both of these motions in limine are directed towards legal issues addressed in the Officers' Proposed Summary Judgment Motion. Accordingly, I shall deny both motions as premature, and without prejudice to the right to refile.

In addition, the Officers have moved in limine to "prohibit[] Plaintiffs from presenting any evidence of, or making any reference or argument concerning, all Plaintiffs' photographic and/or video evidence of Mr. Evans (e.g. family photos/video) and the residence 4034 Bay Drive, as well

12

as, Plaintiffs' evidence and testimony regarding their personal loss." ECF 50 at 1. And, the Officers have moved to exclude opinion evidence from plaintiffs' expert witness, Dr. Tyrone Powers. ECF 53 at 1. Given that this case will not proceed to trial in April 2021, a preliminary ruling on the evidence at issue in these motions at this stage is not necessary. Therefore, I shall deny the motions docketed at ECF 50 and ECF 53, respectively, as premature, without prejudice to the right to the right to refile.

Plaintiffs have filed a motion in limine (ECF 55) to exclude the testimony the defense's expert witness, Charles J. Key, Sr., supported by a memorandum of law. ECF 55-1. Key is an expert "in the areas of police use of force, police training, police policies and procedures," and the like. *Id.* at 1. However, the Officers' Proposed Summary Judgment Motion does not contain any references to the opinion evidence taken from Key, or indeed to Key at all. Nor do the accompanying exhibits. Therefore, I shall deny ECF 55, without prejudice to the right to renew the Motion after resolution of the summary judgment motion.

In sum, I shall deny all of the pending motions in limine, without prejudice. As a result, I shall cancel the hearing scheduled for February 10, 2021.

An Order follows.

Date: January 19, 2021                                  _____/s/_____
                                                        Ellen L. Hollander
                                                        United States District Judge